UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
EFREM R. BURGOS, SR.,

                                            Plaintiff,         **MEMORANDUM DECISION**
                                                                    **AND ORDER**
        -against-

WHITE PLAINS DETECTIVE "JOHN" ARAGONE,       09 Civ. 3900 (GAY)
individually, WHITE PLAINS DETECTIVE "JOHN"
HESLER, individually, WHITE PLAINS DETECTIVE
"JOHN" KIATA, individually, WHITE PLAINS
DETECTIVE TONY CAIATI, individually, and
THE CITY OF WHITE PLAINS, NEW YORK,

                                            Defendants.
----------------------------------------------------------------X

       Plaintiff Efrem Burgos, Sr. commenced this action pursuant to 42 U.S.C. §1983 wherein he alleges that the defendants–the City of White Plains and several members of its Police Department–subjected him to false arrest and excessive force during the course of three separate incidents which occurred on January 25, 2008, February 14, 2008 and March 7, 2008. Presently before this Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").[1] For the reasons that follow, defendants' motion is granted in part.

## I. BACKGROUND

       The following recitation of events is drawn from plaintiff's deposition testimony, defendants' statement of facts and the exhibits submitted in support of the instant motion. Any disputes of material fact are noted.

       On January 25, 2008, plaintiff was in the vicinity of 85 Court Street in White

---

[1] This action is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. §636(c).

Plains when a shooting occurred which resulted in the death of an individual later identified as Officer Christopher Ridley. Later that day, a White Plains Police Officer came to the Volunteers of America shelter at 25 Operations Drive in Valhalla, New York to pick up plaintiff and bring him to the police station to give a statement. It is unclear, however, which officer came to the shelter and what exactly transpired between plaintiff and the officer. Toward the beginning of his deposition, plaintiff testified unequivocally as to the following: Detective Kressevich (a non-party) came to the shelter to take his statement and plaintiff told him he did not want to get involved; Detective Kressevich told plaintiff he would be arrested if he did not come to the station; plaintiff walked to the police car with Detective Kressevich; Kressevich told plaintiff that–because of procedure–he would have to be handcuffed before he got in the car; Kressevich handcuffed plaintiff and drove him to the station; Kressevich took plaintiff's statement; no other officers were present; plaintiff left the station and took a bus back to the shelter. Toward the end of his deposition, however, plaintiff testified that it was defendant Detective Caiati that came to the shelter, handcuffed him because of "procedure" and drove him to the precinct to take his statement. Defendants offer no clarification.

On the morning of January 26, 2008, plaintiff took the van from the shelter to Martine Avenue in White Plains. Defendant Detective Hesler approached plaintiff just after he exited the van and said he wanted to discuss the statement plaintiff gave the night before. Plaintiff refused to talk about it. After an exchange of heated words they parted ways.

Two days later, at the same place and time, Detective Hesler was waiting for

plaintiff to arrive and stopped him as he exited the van. Detective Hesler was a bit more persistent this time and they got into another verbal altercation.

Approximately one week later, Detectives Hesler and Aragon (also a defendant) stopped plaintiff on Mamaroneck Avenue in White Plains and told plaintiff to get into the back seat of their police car which was parked in front of Dunkin Donuts. Plaintiff complied and the officers got into the front seat of the vehicle. They questioned plaintiff about a subpoena and an outstanding warrant and asked him whether he saw the district attorney. According to plaintiff, the officers "were just talking nonsense" and he became very upset. The officers let him out of the car after approximately forty-five minutes.

On February 13, 2008 at approximately 10:00 p.m., Detective Caiati served plaintiff at 25 Operations Drive with a subpoena directing him to appear before the grand jury on February 14, 2008 at 9:00 a.m. According to defendants, plaintiff ripped up the subpoena, threw it on the floor, stated "yeah, I'll be there" and told Detective Caiati: "Go fuck yourself." Between two and three hours later, Officer Feliciano (a non-party) responded to 33 Church Street on a report of a disturbance. Upon arrival he met with plaintiff, who stated that he was upset about a subpoena he had received.

On February 14, 2008, plaintiff appeared as directed and testified before the grand jury. The subsequent events of that day are in dispute.

Plaintiff alleges the following: Ten minutes after he finished his testimony, he exited the courthouse and turned right toward Post Road in White Plains. While standing in front of the Dollar Store on the corner of Post Road, plaintiff was approached by three police cars. Detective Hesler got out of one of the cars and

slammed plaintiff up against the wall. Plaintiff threw his chest up and his head back and shoved Detective Hesler off. The doors opened on the two other police cars and two officers jumped out of each car (Detectives Caiati and Aragon, and two other officers plaintiff could not identify). Detective Hesler approached plaintiff again and Detective Caiati told plaintiff "just let him put the cuffs on you." Plaintiff asked why he was being arrested; one of the officers stated they were arresting plaintiff because he did not appear before the grand jury. Plaintiff told them they were mistaken because he just finished testifying. Detective Hesler handcuffed plaintiff and placed him in the back seat of the police car. As the officer did so, he tried to slam plaintiff's head into the door and they got into a shoving match. Detectives Caiati and Hesler drove plaintiff to the precinct and the other officers followed. At the precinct, as they waited to get out of the car, Detective Hesler and plaintiff got into a cursing match. Detective Hesler (who was in the front passenger seat) turned around, told plaintiff to "shut the fuck up" and punched him in the chest. The officers brought plaintiff inside, handcuffed him to a wall in the interrogation room and left him by himself. After forty-five minutes, Lieutenant Hartnett (a non-party) and an unidentified police captain entered the room and told plaintiff he was free to go.

  Defendants' version of the February 14th encounter between plaintiff and White Plains police is set forth in an unsworn Incident Report filed by Officer Kittelstad (Exhibit G): On February 14, 2008, Officer Kittelstad (a non-party) and Detective Kressevich were assigned to locate plaintiff and inquire whether or not he intended to testify before the grand jury. At approximately 11:40 a.m. the officers located plaintiff near 86 East Post Road. Plaintiff immediately became verbally abusive and physically threatening.

The officers told plaintiff to calm down and lower his voice but he refused to do so. Plaintiff continued to point and yell in their faces. As a crowd began to gather, the officers took plaintiff into custody and transported him to headquarters for further investigation. Plaintiff was released at approximately 12:30 at the direction of Lieutenant Fischer (a non-party).

Sometime around March 1, 2008 plaintiff attempted, without success, to speak to the police captain about the behavior of his officers. Plaintiff also attempted to speak with the mayor, but met with the police commissioner instead. Plaintiff claims he spoke to Commissioner Straub (a non-party) for one-half hour about the officers' allegedly illegal behavior and plaintiff's futile complaints to the captain and lieutenant. According to plaintiff, Commissioner Straub gave him a business card listing a cell phone number and told plaintiff to call him right away if another incident occurred.

On March 7, 2008 while on his way to work, plaintiff again encountered Detectives Hesler and Aragon. Around 10:45 p.m. plaintiff was in the vicinity of Grace Church and Buffalo Wild Wings in White Plains when a black car pulled up and Detectives Hesler and Aragon jumped out. Detective Hesler stood by the driver's door with his gun drawn while Detective Aragon ran up to plaintiff and tried to slam his face against the wall. Plaintiff pushed him off and Detective Aragon tried to push him back up against the wall. Plaintiff assumed a fighting stance; Detective Aragon drew his gun and told plaintiff to stand there and not move. Plaintiff handed them the commissioner's card and told them to call. The officers called and spoke to the commissioner, then told plaintiff he could leave.

On March 12, 2008, plaintiff filed a Personnel Complaint Form with the White

Plains Police Department (Exhibit H). On the form, plaintiff filled in the "date and time of occurrence" as March 7, 2008 "at 10:35 p.m. on my way to work" and the "location of occurrence" as "Main st & Church st." In the Statement of Complaint section, plaintiff alleged that various Detectives from the City of White Plains threatened, harassed and handcuffed him and slammed him face first up against the wall. Plaintiff also alleged that, on numerous occasions, pairs of detectives had threatened him and refused to give him their names or badge numbers.

A day or two after he filed his written complaint, plaintiff returned to the police station and the officer in charge of Internal Affairs, Officer Fitzmaurice (a non-party), told plaintiff he would be arrested if he ever went to City Hall again.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to FRCP 56(a), summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." See Fed. R. Civ. P. 56(a). When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. See Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).

Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Further, "notwithstanding a *pro se* plaintiff's failure to comply strictly with the Local Rules, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." O'Diah v. Yogo Oasis, No. 11 Civ. 309, 2013 WL 3796619, at *1 (S.D.N.Y. July 22, 2013) (quotation and citation omitted). Accordingly, because Mr. Burgos is *pro se*, I will consider his claims in light of the record evidence.

## III. MUNICIPAL LIABILITY

A municipality may be held liable pursuant to 42 U.S.C. § 1983 where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). In other words, a plaintiff who seeks to impose § 1983 liability upon a municipality must demonstrate "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." See City of Canton v. Harris, 489 U.S. 378, 385 (1989). The Supreme Court has held that a single act taken by a municipal employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken, constitutes a municipal policy. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986). Here, the record is devoid of evidence of a policy or custom promulgated by the City of White Plains which caused any of the alleged deprivations of

plaintiff's constitutional rights. Accordingly, all claims against defendant City of White Plains are dismissed.

## IV. INDIVIDUAL LIABILITY UNDER 42 U.S.C. § 1983

In order to establish personal liability under 42 U.S.C. §1983, plaintiff must prove, *inter alia*, that the defendant caused the deprivation of plaintiff's rights. See Taylor v. Brentwood Union Free Sch. Dist., 143 F.3d 679, 685 (2d Cir. 1998) (citation omitted). The Second Circuit has delineated several ways in which a defendant may be personally involved in a constitutional deprivation so as to be liable under §1983: (1) "[t]he defendant may have directly participated in the infraction"; (2) "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong"; (3) "[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices continue"; (4) "a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event." Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

Here, plaintiff's deposition testimony about the genesis of his statement on January 25, 2008 is inconsistent. Based on plaintiff's testimony, it is unclear which officer–Detective Kressevich or Detective Caiati–came to the shelter and what exactly transpired between plaintiff and the officer. Plaintiff proffers no other evidence from which a reasonable jury could infer that Detective Caiati or any other named defendant falsely arrested plaintiff and/or subjected him to excessive force on January 25, 2008. Accordingly, defendants are entitled to summary judgment in their favor as to plaintiff's claims arising from the circumstances surrounding his statement on January 25, 2008.

## V. REMAINING CLAIMS

Defendants proffer sparse grounds for summary judgment on the remaining claims. Defendants have submitted no deposition testimony or affidavits from any of the officers involved in any of the alleged events. They fail to address plaintiff's allegations concerning the March 7th incident. Although defendants argue that they are entitled to qualified immunity on the claims arising from the February 14th incident, their version of the encounter is based solely upon an unsworn Incident Report. Defendants also contend that they are entitled to summary judgment on plaintiff's excessive force claims because plaintiff did not seek any medical treatment and there is no evidence that he suffered any injury. However, "[e]xcessive force is defined relative to the force reasonably believed necessary under the circumstances, and is not determined by the nature of the resulting injuries sustained." Hart v. Binghamton, No. 3:10-CV-1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012); see Graham v. Connor, 490 U.S. 386, 394-95 (1989). Indeed, "a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury." Amato v. City of Saratoga Springs, 170 F.3d 311, 317 (2d Cir. 1999). Here, based upon the record, a reasonable jury could find that the defendant officers' use of *any* amount of force was completely unwarranted "and hence the notion that the injury must be more than 'de minimis' to trigger an assessment of a Fourth Amendment claim appears unjustified." See Yang Feng Zhao v. City of New York, et al., 656 F. Supp.2d 375, 390-91 (S.D.N.Y. 2009). To hold otherwise would endorse the faulty premise "that there exists a threshold of force or injury below which, irrespective of the surrounding circumstances, an officer's force is reasonable as a matter of law."

See Adedeji v. Hoder, No. 09-CV-4046, 2013 WL 1233501, at *6 (E.D.N.Y. Mar. 27, 2013).

## VI. CONCLUSION

Based upon the totality of the record, numerous triable issues of fact preclude summary judgment on plaintiff's claims of false arrest and excessive force against the individual defendants arising from the events of February 14, 2008 and March 7, 2008. Accordingly, defendants' motion for summary judgment is granted in part, only to the extent that the following claims are dismissed: (1) all claims against the City of White Plains and (2) all claims arising from the circumstances surrounding plaintiff's statement on January 25, 2008.[2]

Dated: September 27, 2013
White Plains, New York

SO ORDERED:

_____
GEORGE A. YANTHIS, U.S.M.J.

---

[2] Attached to this Memorandum Decision and Order are copies of all unpublished opinions and decisions cited herein which are available only in electronic form. See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).